Charles Daniel WAGGONER,
Plaintiff-Appellant,

v.

SHELL OIL COMPANY, et
al., Defendants,

Halliburton Company,
Defendant-Appellee.

No. 82–3123.

United States Court of Appeals,
Fifth Circuit.

June 13, 1983.

Jobe & Gurley, Tony B. Jobe, Lawrence M. Einhorn, New Orleans, La., for plaintiff-appellant.

W.K. Christovich, New Orleans, La., for Otis Engineering.

Phelps, Dunbar, Marks, Claverie & Sims, Patrick E. O'Keefe, Richard A. Sabalot, New Orleans, La., for Halliburton.

Before GEE, REAVLEY, and HIGGIN-BOTHAM, Circuit Judges.

PER CURIAM:

Charles Daniel Waggoner sued Halliburton Services, Inc. and others for personal injuries sustained in an accident on a drilling platform off the Louisiana coast. He now appeals from the district court's grant of summary judgment in favor of Halliburton. Finding that there was no factual dispute over Waggoner's contributory negligence and that Halliburton was entitled to judgment as a matter of law, we affirm.

Pool Offshore Co. and defendant Halliburton Services, Inc. were two of several subcontractors doing work in late November, 1978 on Shell Oil's drilling platform. To alleviate crowded conditions on the platform, a Pool employee named Charles Perrodine asked Charles Daniel Waggoner, another Pool employee, to place a large metal basket containing some of Halliburton's equipment onto a narrow overhead beam about thirteen feet above the deck floor. After doing so, Waggoner asked Perrodine whether he should secure the basket to the beam. Perrodine replied that he need not do so.

Nearly two weeks later, the basket was removed from the beam so that the equipment could be used. Afterwards, Halliburton's employees replaced the equipment in the basket and left the platform. Several days later, William "Pee Wee" Wilson, the only Halliburton employee left on the rig, discovered that the basket was in his way and asked Waggoner to move it. Waggoner again placed it on the beam and did not secure it. The basket somehow fell off the beam the next day and struck Waggoner on the back. His lower body is permanently paralyzed.

Waggoner sued Shell, Halliburton, and several other subcontractors under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331–1356, and under 28 U.S.C. § 1332(a).[1] Shell settled for $325,000. Halliburton, however, filed a motion for summary judgment, contending that it was neither negligent nor strictly liable and that Waggoner either was contributorily negligent or had assumed the risk of injury. After a brief hearing, the court granted Halliburton's motion without specifying on which theory it was relying. Waggoner appeals this ruling. He does not, however, appeal the court's grant of summary judgment in favor of two other subcontractors.

Waggoner now argues that a genuine issue of material fact exists over: (1) whether Halliburton owed and breached a duty to store the equipment basket in a safe place; and (2) whether he was contributorily negligent or had assumed a risk in placing the equipment basket on the beam without securing it.[2] In reviewing the court's grant of summary judgment, we must consider the evidence in a light most favorable to Waggoner and determine whether there were no genuine factual disputes and whether Halliburton was entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Daly v. Sprague,* 675 F.2d 716, 724 n. 10 (5th Cir.1982). Having done so, we conclude that there was no disputed issue of fact regarding Waggoner's contributory negligence and that Halliburton was entitled to judgment as a matter of Louisiana law.[3] We need not and do not reach Waggoner's issues of assumption of risk or Halliburton's negligence.[4]

 In Louisiana, a defendant claiming contributory negligence must prove "that the injured party failed to act as a reasonable and prudent man and that his negligence was a contributing cause of the accident." *Parker v. Travelers Insurance Co.,* 400 So.2d 682, 687 (La.App. 4th Cir. 1981). There is no doubt from this record that Halliburton has met this test. Edward Durning, the employee of another subcontractor, testified that the equipment should have been placed on the deck and in any event should not have been placed on the beam "without tie-downs." Waggoner's conduct before the accident and his testimony afterwards demonstrates his agreement with Durning's observation. When Waggoner placed the basket on the beam the first time he asked Perrodine whether he should secure it. Waggoner thus recognized the potential dangers of his conduct. Despite this awareness, he placed the basket on the same beam two weeks later and

1. We thus apply the law of the adjacent state, here Louisiana, pursuant to § 1333(a)(2)(A) of the OCSLA.

2. Waggoner does not raise his strict liability argument on appeal.

3. Louisiana adopted a comparative fault statute that became effective on August 1, 1980. The legislature stated, however, that "[t]he provisions of this act shall not apply to claims arising from acts that occurred prior to the time this act becomes effective." *See* § 4 of Acts 1979, No. 431 (amending art. 2323). Because Waggoner was injured on December 10, 1978, the comparative fault statute is not applicable.

4. Waggoner also asserts that it was "manifest error" for the district court to grant summary judgment "without reading depositions entered into the record." The record does not support this accusation. The trial court's statement that he had no desire to read through the depositions was a response to defendant's observation that plaintiff's allegations in his memorandum contained no references to deposition testimony. The court's reluctance to search through a stack of unmarked depositions for vague allegations of factual disputes is understandable.

again did not secure it. At his deposition, Waggoner admitted that this act was dangerous. In sum, we find no factual dispute but that Waggoner acted unreasonably by placing the basket on a narrow beam without securing it. There also is no question but that so balancing the basket without tie-downs was a "contributing cause" of the accident.

■ Waggoner nonetheless argues that he cannot be held contributorily negligent as a matter of law because he simply was following orders to place the basket on the beam and had no alternative but to comply. Louisiana recognizes this argument, holding that:

> [A] workman's superior cannot create or permit danger and send the workman into it with a warning and escape liability on a theory that the workman was contributorily negligent merely by going into the danger. The workman's only other alternatives are to try to tell his superiors how to run the job, or to quit.

*Chaney v. Brupbacher,* 242 So.2d 627, 631 (La.App. 4th Cir.1970). Thus, an employer claiming contributory negligence also must show that the employee had "a readily available reasonable alternative" to his conduct. *Billedeaux v. Adams,* 355 So.2d 1345 (La.App. 3d Cir.), *remanded on other grounds,* 358 So.2d 640 (La.), *on remand,* 360 So.2d 637 (La.App. 3d Cir.1978).

While we agree with Waggoner's statement of the law, we cannot agree that he lacked a readily available reasonable alternative to doing what he did. Regardless of whether "Pee Wee" Wilson participated in the decision to place the basket on the beam the first time or whether he had any authority over Waggoner, it is undisputed that neither Wilson nor any other Halliburton employee played any part in Waggoner's decision to place the basket on the beam the second time. Waggoner admitted that Wilson asked him only to move the basket and did not specifically tell him to put it back on the beam. His deposition testimony was as follows:

Q. You indicated that at some point, after some work was done, Pee Wee told you they were finished with the basket and you could move it out of the way?

A. Yes, sir.

Q. Did he specifically, then, tell you to put it back on the beam?

A. No, sir.

Q. He just told you to move it?

A. Yes, sir.

Waggoner thus was free to place the basket elsewhere or to secure it to the beam.

It follows that this case is materially different from *Arnold v. Union Oil Co.,* 608 F.2d 575, 579 (5th Cir.1979), on which Waggoner relies. There, plaintiff was an inexperienced worker who attempted to remedy a situation he considered dangerous. His supervisor, however, told him there was no danger, directed him to discontinue the corrective measures he already had undertaken, and instructed him to start the work again using the same equipment he had warned against. The court held that plaintiff was not barred from recovery because he had no readily available reasonable alternative to his conduct. In contrast, no one prevented Waggoner from choosing a safer course of conduct. Halliburton thus demonstrated that Waggoner was contributorily negligent as a matter of law.

Finding that there is no genuine issue of material fact regarding Waggoner's contributory negligence and that Halliburton is entitled to judgment as a matter of law, we affirm the grant of summary judgment in favor of Halliburton.

AFFIRMED.